UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BRADY, Personal Representative
of the Estate of Donald Murray,

        Plaintiff,

v.

                                       Case No. 12-12365
                                       Hon. Gerald Rosen

CITY OF WESTLAND, CITY OF WESTLAND
POLICE OFFICER DAWLEY, CITY OF WESTLAND
SGT. BIRD, CITY OF WESTLAND LT. BENSON, CITY
OF WESTLAND OFFICER MYTYCH AND CITY OF
GARDEN CITY POLICE OFFICERLORENZETTI,

        Defendants

ROMANO LAW, P.L.L.C.
Daniel G. Romano (P 49117)
David G. Blake (P 73544)
Attorneys for Plaintiff
26555 Evergreen Rd., Ste. 1500
Southfield, MI. 48076
248.750.0270
dromano@romanolawpllc.com
dblake@romanolawpllc.com

CUMMINGS, McCLOREY, DAVIS & ACHO, PLC
Gregory A. Roberts (P 33984)
Attorneys for Defendants
33900 Schoolcraft Road
Livonia, MI. 48150
734.261.2400
groberts@cmda-law.com

HEMMING, POLACZYK, CRONIN
WITTHOFF & BENNETT, P.C.
Ronald E. Witthoff (P 26417)
Timothy L. Cronin (p 26417)
217 W. Ann Arbor Road
Suite 302
Plymouth, MI. 48170
734.453.7877
tcronin@hpcswb.com
rwitthoff@hpcswb.com

## WESTLAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, CITY OF WESTLAND, CITY OF WESTLAND POLICE OFFICER DAWLEY, CITY OF WESTLAND SGT. BIRD, CITY OF WESTLAND LT. BENSON, and CITY OF WESTLAND OFFICER MYTYCH, who pursuant to Fed. R. Civ. P. 56, submit this motion for summary judgment.

In support of this motion, Defendants rely upon the attached brief. Defendants have sought concurrence from Plaintiff in the relief requested and such concurrence has been denied.

Respectfully Submitted,

  s/Gregory A. Roberts
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734)261-2400
Email: groberts@cmda-law.com
(P-33984)

Dated: April 1, 2013

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BRADY, Personal Representative
of the Estate of Donald Murray,

      Plaintiff,

v.                                                           Case No. 12-12365
                                                             Hon. Gerald Rosen
CITY OF WESTLAND, CITY OF WESTLAND
POLICE OFFICER DAWLEY, CITY OF WESTLAND
SGT. BIRD, CITY OF WESTLAND LT. BENSON, CITY
OF WESTLAND OFFICER MYTYCH AND CITY OF
GARDEN CITY POLICE OFFICERLORENZETTI,

      Defendants

ROMANO LAW, P.L.L.C.                    CUMMINGS, McCLOREY, DAVIS & ACHO, PLC
Daniel G. Romano (P 49117)              Gregory A. Roberts (P 33984)
David G. Blake (P 73544)                Attorneys for Defendants
Attorneys for Plaintiff                 33900 Schoolcraft Road
26555 Evergreen Rd., Ste. 1500          Livonia, MI.  48150
Southfield, MI.  48076                  734.261.2400
248.750.0270                            groberts@cmda-law.com
dromano@romanolawpllc.com
dblake@romanolawpllc.com

HEMMING, POLACZYK, CRONIN
WITTHOFF & BENNETT, P.C.
Ronald E. Witthoff (P 26417)
Timothy L. Cronin (p 26417)
217 W. Ann Arbor Road
Suite 302
Plymouth, MI.  48170
734.453.7877
tcronin@hpcswb.com
rwitthoff@hpcswb.com

## WESTLAND DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INDEX OF AUTHORITIES...................................................................................ii

QUESTIONS PRESENTED.................................................................................

PROCEDURAL BACKGROUND.........................................................................1

STATEMENT OF FACTS...................................................................................1

STANDARD OF REVIEW..................................................................................4

LAW AND ARGUMENT

     I.     PLAINTIFF HAS FAILED TO PROSECUTE HER CASE......................5

     II.    THE DEFENDANT OFFICERS FROM BOTH DEPARTMENTS HAVE QUALIFIED IMMUNITY FROM THE CLAIMS OF THE ESTATE IN THAT THEIR USE OF FORCE WAS OBJECTIVELY REASONABLE AND DID NOT CONSTITUTE EXCESSIVE FORCE IN VIOLATION OF ANY CONSTITUTIONAL RIGHTS...............................................................7

     III.   THE USE OF A TASER IN THE CIRCUMSTANCES DOES NOT CONSTITUTE EXCESSIVE FORCE.................................................8

     IV.   PLAINTIFF HAS FAILED TO ESTABLISH A §1983 CLAIM AGAINST THE CITY OF WESTLAND BECAUSE THERE IS NO EVIDENCE THAT THE CITY'S POLICY OR CUSTOM CAUSED THE ALLEGED CONSTITUTIONAL VIOLATION................................................11

     V.   WESTLAND POLICE OFFICER DAWLEY WAS NOT PRESENT WHEN DONALD MURRAY WAS DETAINED AND ARRESTED AND DID NOT PARTICIPATE IN ANY ASPECT OF THE CONFRONTATION WITH THE DECEDENT AND THEREFORE SHOULD BE DISMISSED .........14

CONCLUSION..................................................................................................14

CERTIFICATE OF SERVICE

EXHIBIT APPENDIX

i

## INDEX OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 252 (1986)............................................................................................................. 6

*Ashbrook v. Block,*
917 F.2d 918, 921 (6th Cir. 1990)............................................................................................. 5

*Board of County Comm'rs v. Brown,*
520 U.S. 397, 403 (1997)............................................................................................................ 12

*Caie v. West Bloomfield Township,*
485 Fed. App'x 92 (6th Cir. 2012) ............................................................................................. 9

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322-323 (1986). ................................................................................................... 5

*City of Canton v. Harris,*
489 U.S. 378 (1989).................................................................................................................... 12

*Davis v. McCourt,*
226 F. 3d. 506, 511 (6th Cir. 2000)............................................................................................ 5

*Elvis Presley Enters. Inc. v. Elvisly Yours, Inc.,*
936 F. 2d 889, 895 (1991)........................................................................................................... 5

*Ford v. County of Grand Traverse,*
535 F.3d. 483, 495 (6th Cir. 2008) .......................................................................................... 11

*Hagans v. Franklin County Sheriff's Office,*
695 F. 3d 505 (2012).................................................................................................................... 7

*Hartsel v. Keys,*
87 F. 3d 795, 799 (6th Cir. 1996)............................................................................................... 5

*Hill v. McIntyre,*
884 F.2d. 271, 275 (6th Cir. 1989). ......................................................................................... 13

*Kendall v. Hoover Co.,*
751 F.2d 171, 174 (6th Cir. 1984).............................................................................................. 4

*Matthews v. James,*
35 F.3d. 1946, 1049 (6th Cir. 1994) ........................................................................................ 13

*Mayo v. Macomb County,*
183 F.3d 554, 558 (6th Cir. 1999) ............................................................................. 12

*Miller v. Sanilac County,*
606 F.3d. 240, 252 (6th Cir. 2010) ............................................................................ 10

*Monell v. New York City Department of Social Services,*
436 U.S. 658 (1978).................................................................................................... 11

*Mosholder v. Barnhardt,*
679 F.3d. 443, 449-49 (6th Cir. 2012), reh'g denied (Aug. 10, 2012) ......................... 6

*Mt. Lebanon Pers. Care Home Inc. v. Hoover Universal, Inc.,*
276 F.3d 845, 848 (6th Cir. 2002)................................................................................. 4

*Newell Rubbermaid, Inc. v. Raymond Corp.,*
676 F.3d. 521, 533 (6th Cir. 2012) .............................................................................. 6

*Reichle v. Howards,*
566 U.S. ___, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d. 985 (2012). ................................. 7

*St. Francis Health Care Ctr. v. Shalala,*
205 F.3d 937, 943 (6th Cir. 2000).................................................................................. 4

*Stemler v. City of Florence,*
126 F. 3d. 856, 865 (6th Cir. 1997)............................................................................. 13

*Street v. J.C. Bradford & Co.,*
886 F.2d 1472, 1479 (6th Cir. 1989).............................................................................. 4

*Tucker v. Union of Needletraders, Indus. And Textile Employees,*
407 F.3d. 784, 788 (6th Cir. 2005) ............................................................................... 6

*U.S. Structures Inc. v. J.P. Structures,*
130 F. 3d 1185, 1189 (6th Cir. 1997)............................................................................. 5

*Williams v Sandel,*
433 Fed. App'x 353 (6th Cir. 2001) ............................................................................... 9

Statutes
MCL 600.2922.................................................................................................................. 1

**Rules**

F.R.C.P. 56(a) .................................................................................................................... 1

Fed. R. Civ. P. 56(c) .......................................................................................................... 4

## QUESTIONS PRESENTED

I.      WHETHER PLAINTIFF HAS FAILED TO PROSECUTE HER CASE?

II.     WHETHER THE DEFENDANT OFFICERS FROM BOTH DEPARTMENTS
        HAVE QUALIFIED IMMUNITY FROM THE CLAIMS OF THE ESTATE IN
        THAT THEIR USE OF FORCE WAS OBJECTIVELY REASONABLE AND
        DID NOT CONSTITUTE EXCESSIVE FORCE IN VIOLATION OF ANY
        CONSTITUTIONAL RIGHTS?

III.    WHETHER THE USE OF A TASER IN THE CIRCUMSTANCES DOES NOT
        CONSTITUTE EXCESSIVE FORCE?

IV.     WHETHER PLAINTIFF HAS FAILED TO ESTABLISH A §1983 CLAIM
        AGAINST THE CITY OF WESTLAND BECAUSE THERE IS NO EVIDENCE
        THAT THE CITY'S POLICY OR CUSTOM CAUSED THE ALLEGED
        ONSTITUTIONAL VIOLATION?

V.      WHETHER WESTLAND POLICE OFFICER DAWLEY IS ENTITLED TO
        DISMISSAL BEING HE WAS NOT PRESENT WHEN DONALD MURRAY
        WAS DETAINED AND ARRESTED AND DID NOT PARTICIPATE IN ANY
        ASPECT OF THE CONFRONTATION WITH THE DECEDENT?

## PROCEDURAL BACKGROUND

This matter is brought by Mary Brady the Personal Representative of the Estate of Donald Murray, who was also her son. The case styles itself as a wrongful death action pursuant to the MCL 600.2922. The Complaint alleges three counts (Ex. 1). Count I alleges a 42 U.S.C. §1983 claim against all Defendants. Count II alleges a 42 U.S.C. §1983 claim against the City of Westland and Count III alleges various state claims against all Defendants for gross negligence; willful and wanton misconduct; assault and battery; and intentional infliction of emotional distress. The Defendants consist of the City of Westland and four of its police officers: Officer Dawley, Sgt. Steven Bird, Lt. Chris Benson and Officer Mytych (collectively the Westland Defendants) Additional Defendants include Garden City Police Officer Lorenzetti.

This is the Westland Defendants' motion for summary judgment pursuant to F.R.C.P. 56(a) in that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

The decedent Donald Murray was 38 years old at the time of his death on July 30, 2011 about 10:30 a.m.  According to the decedent's brother, he had been using crack cocaine since he was 22 years old. The decedent has been in prison for various theft related crimes for approximately five (5) years and released around April of 2011. At the time of the subject incident, he was living in Lenawee County with his retired mother, Mary Brady. Mary Brady was in Tennessee during this incident and has no personal knowledge of any facts at the scene.

On the Friday night of July 29, 2011, the decedent went with his friend Darren to a Westland area apartment of their mutual friends, Annette and Mark. They spent the night smoking

1

crack, possibly drinking, playing cards and this continued into Saturday morning. Sometime around 10:00 a.m., the decedent was acting "scared and paranoid." (Ex. 2, Statements of Doug Murray, Mark Robinson and Annette Robinson). The statement of Annette and the testimony of the decedent's mother both indicate paranoia was a characteristic the decedent had when smoking crack.

Don Murray then bolted from the apartment. He was talked back inside by Mark, but then he bolted again after grabbing a large ashtray to arm himself. His friends did not see him again. Mr. Murray turned up in a nearby Westland neighborhood where he attracted some attention because he was acting bizarre and yelling "call the cops" and carrying the ashtray. After cutting through one yard, he was confronted by the home's resident, Charles Toth. He threw the ashtray at Toth's house and then hopped a fence heading toward the home of 80 year old Beverly Moore and her 47 year old son, Darryl.

The events just recounted and the following incident is the subject of and more fully described in the narrative section of the Police Report and Investigation (Ex. 3). It is an amazing story. Ms. Moore heard a pounding at her door. Thinking her screen door was closed, she opened the main door. Donald Murray then pushed her down and entered the house. Darryl Moore was in the basement and heard shouting and a thud that sounded like his mother fell. He ran up the stairs and saw the stranger and saw his mom on the floor. Moore tried to steer Murray to a door. Murray then started walking into the front room and Darryl yelled for him to leave. The suspect grabbed a ceramic mug, raised his hand and moved toward Beverly Moore. He kicked over an end table and ultimately grabbed Ms. Moore pinning her arms across her back. Darryl then attacked the assailant and fought him for 10 minutes or so trying to get him out the front door. The decedent tore Darryl's shirt off, shattered his glasses and fought until Darryl finally threw him out onto the porch. There

Murray fell, struck his head on landscape bricks and was apparently knocked out for 6 or so minutes. Darryl went in, found his mom lying on the floor and called 911.

Looking outside, Darryl saw the decedent stir, rise and head toward the back. Darryl followed the suspect and watched him unsuccessfully try to climb a fence. Then the suspect ran back to the Moore's front door and tried to reenter the house. The fight began again. The suspect would not stop fighting.

Fortunately, two neighbors come to Darryl's aid, Charles Ables and Patrick Cudney. These three men then fought to restrain the decedent who resisted them with all his might. They were trying to pin his arms and legs. At that time, Garden City Officer Lorenzetti arrived. The statements and affidavits of Darryl Moore, Charles Ables and Patrick Cudney are attached respectively (Exs. 4, 5 & 6). Photographs of the Moore's residence and the areas where the fighting occurred are attached. (Ex. 7). The suspect continued to fight and Officer Lorenzetti tried to hold him down and cuff him with the assistance of the two neighbors, ultimately placing a knee on the Plaintiff's lower back. This did not stop the fight and Lorenzetti got at least one cuff on the suspect. At this time Westland Officers Bird, Mytych and Benson arrived. By then the confrontation had gone on almost 20 minutes.

These officers took over from the neighbors and continued to attempt to complete cuffing Murray behind his back. Murray was yelling and continued to resist. A closed fist strike to the side was not effective in controlling the decedent or effecting complete handcuffing. After the suspect continued kicking, struggling, attempting to get on his feet, Officer Bird administered a single Taser drive stun to the lower right back. The decedent continued to resist and was overcome only by the efforts of three officers. There were no weapons, kicking, choking or even multiple fist strikes. They finally succeeded in getting Murray cuffed behind the back and he was led /carried

to a squad car and placed in a seated posture against the car.  A short time later Murray's breathing was seen to be labored and another Westland officer administered CPR. An EMS crew was on its way and took over Murray's treatment and transported him to Garden City Hospital where he expired.

The officers completed a use of force report. (Ex. 8)  The use of Taser was in its most minimal capacity and was not even observed by the nearby witnesses. Tasers have a cartridge or function that allows the down loading of its discharge history. The download data in this incident is attached. (Ex. 9) This data indicates irrefutably a single discharge of three (3) seconds.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material and precludes grant of summary judgment if proof of that fact would have the effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect the application of appropriate principles of law to the rights and obligations of the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but

4

must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the Plaintiff." That party may not simply rely on its pleading. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir. 1990). Evidence submitted in opposition to a motion for summary judgment must be admissible. *U.S. Structures Inc. v. J.P. Structures,* 130 F. 3d 1185, 1189 (6th Cir. 1997). "Accordingly, hearsay evidence may not be considered on the motion for summary judgment." *Hartsel v. Keys,* 87 F. 3d 795, 799 (6th Cir. 1996); *U.S Structures, supra* at 1189. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F. 3d. 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters. Inc. v. Elvisly Yours, Inc.,* 936 F. 2d 889, 895 (1991).

## LAW AND ARGUMENT

### I.    PLAINTIFF HAS FAILED TO PROSECUTE HER CASE

Having completed no discovery, the Plaintiffs have no support for any factual claims. The responses to the Westland Interrogatories and Request for Production specifically ask the common discovery questions utilized to reveal witnesses, facts, etc. The Personal Representative's response to those fundamental questions are attached. (Ex. 10). There has been no supplementation of the responses since they were received on or about October 29, 2012. Partially paraphrased for brevity:

5

Q.     Who are your fact/damage witnesses?

A.     I don't know at this time.

Q.     Who are your fact/liability witnesses?

A.     I don't know at this time.

Q.     Who are your experts . . . ?

A.     None have been retained.

The deposition of Ms. Brady is attached. (Ex. 11). This was concluded on March 11, 2013. There are no new facts that the Plaintiffs have developed to support their case. The Plaintiff in this case cannot rely on mere allegations in their pleadings. See *Tucker v. Union of Needletraders, Indus. And Textile Employees,* 407 F.3d. 784, 788 (6th Cir. 2005). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a properly supported motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Mosholder v. Barnhardt,* 679 F.3d. 443, 449-49 (6th Cir. 2012), reh'g denied (Aug. 10, 2012) quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

The Sixth Circuit has also stated that:

> "An opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must …set out specific facts showing a genuine issue for trial …Rule 56 require[s] that the party seeking to avoid summary judgment must point to evidence in the record demonstrating genuine dispute of material fact. A plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position."

*Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d. 521, 533 (6th Cir. 2012) (internal citations committed). The Plaintiff cannot merely reassert its previous allegations and say their complaint suffices to create a question of fact. Frankly, the Plaintiff abandoned any sincere effort to develop this case. Their factual and legal deficiencies require a dismissal of their case.

II.    THE DEFENDANT OFFICERS FROM BOTH DEPARTMENTS HAVE
       QUALIFIED IMMUNITY FROM THE CLAIMS OF THE ESTATE IN THAT
       THEIR USE OF FORCE WAS OBJECTIVELY REASONABLE AND DID
       NOT CONSTITUTE EXCESSIVE FORCE IN VIOLATION OF ANY
       CONSTITUTIONAL RIGHTS.

The police officers that responded to the scene came to the immediate relief of the civilians

who were trying to restrain Mr. Murray. Qualified immunity spares them from money damages

for their law enforcement work as long as they did not violate the clearly established constitutional

rights of Donald Murray at the time of the encounter. See *Hagans v. Franklin County Sheriff's*

*Office,* 695 F. 3d 505 (2012) and *Reichle v. Howards,* 566 U.S. ___, 132 S. Ct. 2088, 2093, 182

L. Ed. 2d. 985 (2012). The identification of a constitutional right is not to be defined at "a high

level of generality." *Hagans, supra* at 508.

In the instant case, the suspect had already been detained by the resident of the home he

invaded and the subsequent assaults on Mr. Moore and his mother, Beverly Moore. The

Defendants in this case therefore assert that there can be no question whatsoever that Donald

Murray was properly subject to arrest for his crimes. The issue then becomes whether the force

used to take custody and control of Murray by the officers was excessive. It is obvious to any

impartial observer that significant force was required to control this suspect because he was not

going to give up. No person at the scene, as shown by the police reports and the attached affidavits,

believe there was any excessive force used in this case.

Most of the struggle was the citizens holding the Plaintiff's arms and legs while attempting

to hold him down until the officers arrived. Virtually, all cuts, abrasions, the head injury and

bruising were caused by the citizens prior to police even arriving. When Officer Lorenzetti arrived

he could not accomplish much more and he acted to hold the decedent down (with citizen help) by putting knee pressure on Murray's back. When Westland officers arrived and relieved the citizens, their efforts focused on holding the Plaintiff down and attempting to get two arms cuffed behind his back. The use of force described in Exhibit 8 does not reflect excess force. In fact, it indicates one forceful blow with a closed fist to Murray's side. It was ineffective. There simply is no evidence that the Defendant officers excessively beat, kicked, struck or otherwise used any inappropriate physical force against the decedent. All evidence and testimony is just the opposite. Significantly, the officers continued a level of force that was the same as that used by the citizens who originally detained Murray.

It is not possible for people or officers in this type of situation to explore the suspect's background to seek explanations for his conduct, only to react to the suspect's immediate threat of indiscriminate violence. In fact, it is clear under Michigan law that inside his house Darryl Moore could have used deadly force on Mr. Murray during the home invasion and attack on the person of him and his mother.

### III.     THE USE OF A TASER IN THE CIRCUMSTANCES DOES NOT CONSTITUTE EXCESSIVE FORCE.

Sergeant Steven Bird, after announcing to Mr. Murray that he would be tased if he did not stop resisting, conducted a single drive stun to Murray's low back that lasted 3 seconds or less. It was not particularly effective and the Plaintiff continued to struggle. It was not repeated and the decedent stopped when he was fully exhausted and fully cuffed behind his back.

This is a fairly simple fact situation. In the case most similar, *Hagans v Franklin County Sheriff's Office, supra,* the struggling, resistant subject was tased 4 – 6 times in drive stun mode while he wrestled with three officers attempting to cuff the suspect. The taser was not effective in subduing Hagans. Hagans experienced breathing difficulty 10 minutes later and went unconscious.

8

He died a few days later. Not surprisingly, Hagan had high levels of cocaine in his system. It is well established in the Sixth Circuit that "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Id.* at 509. Hagans, like Mr. Murray, was apparently in some type of drug caused psychotic event. Hagans cites the case of *Williams v Sandel,* 433 Fed. App'x 353 (6th Cir. 2001) where a drug addled, nude and resisting subject was tased 37 times, clubbed and pepper sprayed until arrest was affected. The Court concluded that was not excessive force despite the sheer number of taser strikes.

In *Caie v. West Bloomfield Township,* 485 Fed. App'x 92 (6th Cir. 2012), also cited by the Hagan's opinion, the suspect was wrestled to the ground by two police officers but would not succumb or move his arms behind his back. He was tased by a third officers. Court stated "The tasing was reasonable given the suspect's active resist to the officers' attempts to secure his arms behind his back. *Id.* at 97. It is especially important to recognize a fighting and resistant subject needs to be cuffed behind their back in order to establish control and that cuffing in front will not restrict a suspect from the capability to resist or threaten the physical safety of the officers or citizens at the scene.

This active violent and continuing resistance is the distinguishing element in concluding the use of the taser was not an act of excessive force. This is the law in the Eighth, Eleventh, and Tenth Circuit Courts. (Ex. 12, Hagan Opinion).

Beverly Moore had been injured in the attack by Murray on this 80 year old woman. Her 48 year old son was battered, his clothes torn off and glasses smashed in his fight to protect his household. Officer Lorenzetti suffered minor injuries that still required a trip to the hospital. There cannot be any legitimate doubt Murray posed an active physical threat at the time he was arrested.

9

Murray's later death is unfortunate, but not relevant. "In determining whether there has been a violation of the Fourth Amendment, we consider not to the extent of the injury, but whether there was gratuitous violence. *Hagan, supra,* at 511. See also *Miller v. Sanilac County,* 606 F.3d. 240, 252 (6th Cir. 2010).

The decedent was the subject of an autopsy by the Wayne County Medical Examiner. His death was determined to be accidental and caused by Excited Delirium Syndrome (EDS). Generally, the signs of EDS are: paranoia, disorientation, hyper-aggression, tachycardia, hallucination, incoherent speech or shouting, incredible strength and hyperthermia. (Ex. 13, Wikipedia EDS definition of September 29, 2011). While there is some controversy about this syndrome, it is uncanny how the decedent Murray exactly fits these criteria. EDS is frequently correlated with cocaine use. Notably, cocaine metabolites were uncovered by the medical examiner's office and Murray was known to be actively using the substance just prior to his death. The Medical Examiner's report is attached (Ex. 14). The Plaintiffs have revealed no medical evidence of any type to refute the medical examiners conclusions.

The proper use of a taser is easily distinguished from gratuitous violence. In the very recent case of *McAdam v. Warmuskerken,* 2013 WL 1092729 (6th Cir. 2013) officers pulled over a woman and began to perform field sobriety tests. Her adult son and passenger, exited the car to "check on her" and reentered the vehicle. He existed again and then offered that he would walk home and after being told to go home or risk arrest, McAdam began to walk away. He also took out a cell phone and recorded the officers who then followed and arrested him for disorderly conduct. He was allegedly knocked down with a leg sweep and tased four times while unresistant and incapacitated . McAdam was taken to the hospital for treatment of his resultant injuries and handcuffed to a locked bed. McAdam was tased three more times while incapable offering any

physical resistance. The issue turns on the conduct of the suspect. The Court states: "a single tasing violates a Plaintiff's clearly established rights if he is neutralized and is not resisting an officer's efforts to restrain him. *Id.*

Simply put Officer Bird's single drive stun of the out of control and actively resisting Donald Murray, was not excessive force under any version of the law. There are no acts of any officer in this case that can be deemed as excessive force. There are no acts for which the City of Westland can be held liable for the acts of its officers. The Plaintiffs have abdicated their burden to provide any evidence or proof as to any Defendants. Under these facts, the alleged claims of assault and battery intentional infliction of emotional distress and gross negligence are also meritless and must be dismissed.

IV. **PLAINTIFF HAS FAILED TO ESTABLISH A §1983 CLAIM AGAINST THE CITY OF WESTLAND BECAUSE THERE IS NO EVIDENCE THAT THE CITY'S POLICY OR CUSTOM CAUSED THE ALLEGED CONSTITUTIONAL VIOLATION.**

U.S. Supreme Court precedent has established that a municipality cannot be held liable under 42 U.S.C. §1983 based on the theory of respondeat superior. See *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978). Rather, under *Monell* and its progeny, a municipality may be held liable only if the injuries are inflicted pursuit to the municipality's policy or custom. *Monell* at 694. A Plaintiff must establish that the municipality's policies or customs (or lack thereof) were a "moving force behind the deprivation of her constitution rights." *Id.*

In order to impose municipal liability, the Plaintiff bringing a §1983 claim against a municipality must identify the policy or custom that caused her injury. *Ford v. County of Grand Traverse,* 535 F.3d. 483, 495 (6th Cir. 2008). Identifying a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose act may fairly be said to be those of the municipality.

11

*Id.* Once the policy is identified, "the plaintiff must show that the municipality's action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." ***Board of County Comm'rs v. Brown,*** 520 U.S. 397, 403 (1997).

Westland can only be held liable if Plaintiff's injuries were the result of an unconstitutional policy or custom of the City. ***Matthews,*** 35 F.3d. at 1049 (citing ***Monell, supra***). In this case, Plaintiff has failed to present evidence of an unconstitutional policy or custom that caused the alleged constitutional violation. Therefore, Plaintiff's claim must fail.

Plaintiff also alleges that the City failed to properly train its officers in some unspecified way or in Taser use. The Supreme Court addressed the issue of municipal liability under §1983 for failure to train employees in ***City of Canton v. Harris,*** 489 U.S. 378 (1989). In that case, a detainee brought suit against the City of Canton alleging, among other claims, that jail officials were inadequately trained to deal with her medical needs. The Court enunciated the standard for municipal liability under a failure to train theory:

> We hold today that **inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifferent to the rights of persons with whom the police come into contact**.
>
> This rule is most consistent with our admonition in ***Monell, [supra],*** . . . that a municipality can be liable under §1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its policies in the relevant respect evidences a "deliberate indifference to the rights of its inhabitants, can such a shortcoming be properly thought of as a City "policy or custom" that is actionable under §1983. ***Id.*** at 388 (Emphasis added).

Allegations that the officers in question could have been better trained are insufficient. *Id.* Further, it is not enough for a Plaintiff "to show that its injury could have been avoided if the officer had more or better training." *Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999).

In order to hold a municipality liable under §1983, the Plaintiff must show that the training program is inadequate to the tasks an officer must perform; that the inadequacy is the result of deliberate indifference and that the inadequacy is "closely related to" or "actually caused" the Plaintiff's injury. *Matthews v. James,* 35 F.3d. 1946, 1049 (6th Cir. 1994); *Hill v. McIntyre,* 884 F.2d. 271, 275 (6th Cir. 1989).

In this case, there is no evidence of inadequate training on the part of the City because the Plaintiffs have conducted no relevant discovery to develop any such cause of action. However, assuming arguendo that the training is inadequate, Plaintiff cannot show that the alleged inadequacy of the training was the result of the City's deliberate indifference. "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of County Comm'rs,* 520 U.S. at 410. In *Stemler v. City of Florence,* 126 F. 3d. 856, 865 (6th Cir. 1997) the Sixth Circuit held that a municipality acts with deliberate indifference when the municipality was aware of prior unconstitutional actions of its employees and failed to respond. No such evidence exists in this case.

Plaintiff has failed to show that Defendant City of Westland's failure to train its officers amounted to deliberate indifference. Plaintiff has failed to present evidence of prior instances of unconstitutional conduct of which the City was aware and failed to take action. Thus, Plaintiff cannot show that the City has ignored a history of abuse and that it was clearly on notice that the

training in this particular area was clearly deficient and likely to cause injury. Plaintiff merely relies on this single incident which is insufficient to establish municipal liability.

V.    WESTLAND POLICE OFFICER DAWLEY WAS NOT PRESENT WHEN DONALD MURRAY WAS DETAINED AND ARRESTED AND DID NOT PARTICIPATE IN ANY ASPECT OF THE CONFRONTATION WITH THE DECEDENT AND THEREFORE SHOULD BE DISMISSED.

The Plaintiff in her complaint lists Sgt. Kyle Dawley as a party Defendant but does not specify any individual actions attributable to him. (Ex. 1, Complaint). He did not arrive at the scene until after the confrontation and did not touch Mr. Murray or even witness the confrontation. The homeowner/witness Darryl Moore states in his affidavit (Ex. 4) that Dawley was not one of the officers who helped arrest Don Murray. Further, Sgt. Dawley's report (contained as part of Ex. 3) indicates he arrived after the incident. Dawley's role was to interview witnesses, take photographs and to investigate the events leading up to the incident. There are no facts or evidence of any kind that implicate Sgt. Kyle Dawley is liable in any aspect of this case and absent such proof, he must be dismissed.

## CONCLUSION

In conclusion there is simply no evidence that any excessive force occurred and the Plaintiffs have no medical evidence or any other objective or admissible evidence that any tortious conduct of any officers of any department can be linked to Mr. Murray's death from EDS. Under these circumstances, this action should be dismissed with prejudice in its entirety.

Respectfully Submitted,

  s/Gregory A. Roberts
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan  48150
Telephone:  (734)261-2400
Email:  groberts@cmda-law.com
(P-33984)

Dated: April 1, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: N/A, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

                                   s/Laura Helfer
                                     Administrative Assistant to Gregory A. Roberts
                                     33900 Schoolcraft Road
                                     Livonia, Michigan 48150
                                     Telephone:  (734)261-2400 Ext. 1237
                                     Email:  lhelfer@cmda-law.com