**EXHIBIT 12**

Reversed and remanded.

695 F.3d 505
United States Court of Appeals,
Sixth Circuit.

Patricia HAGANS, Administratrix of the Estate of Patrick Hagans, Deceased, Plaintiff–Appellee,
v.
FRANKLIN COUNTY SHERIFF'S OFFICE, Franklin County Hall of Justice; James A. Karnes, In His Capacity as Sheriff of Franklin County, Ohio, Franklin County Hall of Justice; Jason Ratcliff, Individually and In His Capacity As a Franklin County Deputy Sheriff, c/o Franklin County Sheriff's Office, Franklin County Hall of Justice, Defendants–Appellants.

No. 11–3648. | Argued: July 17, 2012. | Decided and Filed: Aug. 23, 2012. | Rehearing and Rehearing En Banc Denied Sept. 28, 2012.

Synopsis
**Background:** Estate of suspect who died several days after police officer used stun gun to subdue him brought state-court action against officer and county sheriff's department, alleging that officer used excessive force against suspect in violation of Fourth Amendment and Ohio's assault and battery laws. After action was removed, officer moved for summary judgment based on qualified immunity. The United States District Court for the Southern District of Ohio, Gregory L. Frost, J., 2011 WL 2173696, denied motion. Officer brought interlocutory appeal.

**Holdings:** The Court of Appeals, Sutton, Circuit Judge, held that:

[1] officer did not violate clearly established law in using stun gun in attempt to subdue suspect, and thus was entitled to qualified immunity;

[2] sheriff's department was not liable for alleged failure to train its officers on proper use of stun guns; and

[3] Ohio's statutory immunity applied to preclude officer's liability for assault and battery.

West Headnotes (7)

[1]  Civil Rights
     ⇒ Government Agencies and Officers
     Civil Rights
     ⇒ Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general
     Qualified-immunity case presents two questions: (1) whether officer violated claimant's constitutional rights, and, if so, (2) whether that constitutional right was clearly established at the time of the incident.

     1 Cases that cite this headnote

[2]  Civil Rights
     ⇒ Sheriffs, police, and other peace officers
     Qualified immunity spares police officer from money-damages claims for his law-enforcement work so long as officer did not violate the clearly established constitutional rights of plaintiff at the time of underlying encounter.

     4 Cases that cite this headnote

[3]  Civil Rights
     ⇒ Sheriffs, police, and other peace officers
     At the time that police officer used stun gun in attempting to subdue suspect, it was not clearly established that using stun gun repeatedly on suspect who was out of control, actively and forcibly resisting arrest, and refusing to be handcuffed amounted to use of excessive force in violation of Fourth Amendment, and therefore officer was entitled to qualified immunity from money damages under § 1983, even though suspect did not appear to have harmed and did not threaten other officers involved in incident, suspect did not pose risk of getting away, and officer who used stun gun knew only that disturbance had been reported, and even if stun gun shocks might have contributed to suspect's death three days after incident. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 1

| | |
|---|---|
| | 4 Cases that cite this headnote |
| [4] | **Arrest**<br>⮌ Use of force<br><br>In determining whether there has been a use of excessive force in violation of the Fourth Amendment, court considers not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence. U.S.C.A. Const.Amend. 4.<br><br>1 Cases that cite this headnote |
| [5] | **Civil Rights**<br>⮌ Criminal law enforcement; prisons<br><br>Sheriff's department was not liable for alleged failure to train its officers on proper use of stun guns, in deliberate indifference to rights of suspects to be free from use of excessive force, where officer's repeated use of stun gun in attempt to subdue suspect who was out of control, actively and forcibly resisting arrest, and refusing to be handcuffed did not violate clearly established right. U.S.C.A. Const.Amend. 4.<br><br>3 Cases that cite this headnote |
| [6] | **Civil Rights**<br>⮌ Lack of Control, Training, or Supervision; Knowledge and Inaction<br><br>Municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.<br><br>1 Cases that cite this headnote |
| [7] | **Municipal Corporations**<br>⮌ Police and fire<br><br>==Police officer who repeatedly used stun gun in attempt to subdue suspect who was out of control, actively and forcibly resisting arrest, and refusing to be handcuffed did not violate clearly established right, and did not otherwise act with malicious purpose, in bad faith, or in wanton or reckless character, and therefore Ohio's statutory== immunity applied to preclude officer's liability for assault and battery. Ohio R.C. § 2744.03(A)(6)(b).<br><br>2 Cases that cite this headnote |

**Attorneys and Law Firms**

\*506 **ARGUED:** Mary Jane Martin, Assistant Prosecuting Attorney, Columbus, Ohio, for Appellants. Thomas Joseph O'Connell, Columbus, Ohio, for Appellee. **ON BRIEF:** Mary Jane Martin, Arnold Paul Thies, Assistant Prosecuting Attorney, Columbus, Ohio, for Appellants. Thomas Joseph O'Connell, Columbus, Ohio, for Appellee.

Before: SUTTON and GRIFFIN, Circuit Judges; DOWD, District Judge.\*

Opinion

## OPINION

SUTTON, Circuit Judge.

Invented by a NASA scientist more than fifty years ago, the taser has become an ever-present tool of law enforcement. The \*507 device allows officers to incapacitate resistant suspects for a brief period of time with relatively few risks. Relatively few though those risks may be, they are not non-existent, as this case illustrates. A police officer in Columbus, Ohio, used a taser to subdue Patrick Hagans, a middle-aged man undone by cocaine and unwilling as a result to allow officers to detain him. Hagans died three days after the incident. Because the officer did not violate clearly established law by using the taser in this setting, qualified immunity protects him from this lawsuit. We reverse the district court's contrary decision.

### I.

Patrick Hagans spent the early morning hours of May 13, 2007, smoking crack cocaine with his girlfriend. Around 5:30 a.m., Hagans became paranoid and locked himself in the bathroom, telling his girlfriend that "people were after him." R. at 32. Hagans broke the bathroom window, climbed outside and began running around his yard screaming. The commotion woke up Hagans' next door neighbor, Robert Bogard, who saw Hagans kicking chairs around his deck and

jumping on top of cars in his driveway. Having "never seen another human in such a rage in [his] entire life," Bogard called the police around 5:35 a.m. *Id.* at 2. The dispatcher informed officers in the area that there was an "unknown disturbance" at Hagans' address.

Officer Nelson Frantz arrived first, around 5:42 a.m., and a shirtless Hagans came running toward him. Frantz ordered Hagans to stop, but Hagans bolted for the backyard, and Frantz gave chase. Frantz shot pepper spray at Hagans, but it hit Hagans' backside, to no effect. Hagans raced back to the front of the house, where he encountered Officer Troy Hughes, who had just arrived. Hagans ran to Hughes' cruiser and began yanking on the locked driver's side door handle. Hagans did not obey Hughes' command to stop, prompting Hughes to grab him by the waist and wrestle him to the pavement. Officer Frantz soon joined the scuffle and tried to subdue Hagans as well. Hagans refused to be handcuffed. He lay down on the pavement and locked his arms tightly under his body, kicking his feet and continuing to scream.

While Officers Hughes and Frantz continued to struggle with Hagans on the ground, a third officer, Jason Ratcliff, approached. Seeing that Hagans was still actively resisting, Ratcliff unholstered his taser and applied it in drive-stun mode, pressing the taser directly against Hagans' upper back. The shock apparently did not faze Hagans, as he reached back and tried to grab the taser. Ratcliff tased Hagans a second time, again to no effect and again prompting Hagans to grab for the device. At this point, Ratcliff tried to use the taser in dart mode, firing two electric probes at Hagans from a distance, but the probes missed (how, from such a short distance, is not clear). Ratcliff tased Hagans two to four more times in drive-stun mode. Realizing that the shocks were not working, Ratcliff joined the other two officers in trying to subdue Hagans by hand. After struggling for twenty or thirty seconds, the three officers finally secured Hagans' wrists with handcuffs and put shackles on his legs to keep him from kicking or running.

A medical squad arrived. Alert at the time, Hagans lost consciousness and stopped breathing about ten minutes later. Paramedics administered CPR in the ambulance on the way to the hospital, restoring Hagans' pulse and respiration. Yet Hagans never regained consciousness, and he died three days later. The coroner found cocaine in Hagans' system and listed **\*508** his cause of death as "bronchopneumonia due to anoxic encephalopathy due to cocaine intoxication," R. 51–7 at 6—which is to say, the cocaine starved his brain of oxygen, leading to fatal respiratory complications. The coroner's report also listed "[c]oronary atherosclerosis"—hardening of the arteries in the heart—as "a contributing factor." *Id.*

In August 2008, Hagans' estate filed this lawsuit in Ohio state court against the Franklin County Sheriff's Department and Officer Ratcliff. Hagans alleges that Ratcliff used excessive force by tasing him repeatedly in violation of the Fourth (and Fourteenth) Amendment and in violation of Ohio's assault and battery laws. The defendants removed the case to federal court. Following discovery, Officer Ratcliff moved for summary judgment on the basis of qualified immunity. The district court denied Ratcliff's motion, and Ratcliff filed this interlocutory appeal. *See* 28 U.S.C. § 1291; *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

## II.

[1] This qualified-immunity case, like all qualified-immunity cases, presents two questions: (1) whether the officer (Ratcliff) violated the claimant's (Hagans') constitutional (Fourth Amendment) rights (by repeatedly tasing him after he actively resisted arrest); and, if so, (2) whether that constitutional right was clearly established at the time of the incident (in May 2007, when the tasing occurred). The first question raises some complications. The second one does not. We opt to answer the easier of the two questions, saving the harder one for another day. *See Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

[2] Qualified immunity spares Ratcliff from money-damages claims for his law-enforcement work so long as he did not violate the clearly established constitutional rights of Hagans at the time of the encounter. *Reichle v. Howards,* 566 U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). It is one thing to overturn a conviction based on judicial interpretations of a constitutional guarantee reached after officers make an arrest; it is quite another to expose officers to the time, expense and risk of money-damages actions based on interpretations not yet clearly established.

In deciding whether a right has been clearly established, the Supreme Court has "repeatedly" warned lower courts not to define the right at "a high level of generality." *Ashcroft v. al-Kidd,* 563 U.S. ——, 131 S.Ct. 2074, 2084, 179 L.Ed.2d

1149 (2011). Hagans proposes a lofty definition of the right ("the right to be free from excessive force," R. 63 at 9), one floor down from the words of the Fourth Amendment itself ("the right to be free of 'unreasonable ... seizures' ") and two floors down from the highest level of generality possible ("the right to be free from a constitutional violation"). Yet these types of inquiries do little to answer the question. "The general proposition" that the Fourth Amendment prohibits police officers from using excessive force "is of little help in determining whether the violative nature of [Ratcliff's] particular conduct [was] clearly established." *al-Kidd,* 131 S.Ct. at 2084. It is sometimes worse than that: If a court does not carefully define the right, it risks collapsing the two qualified-immunity inquiries into one, permitting the constitutional-violation inquiry *always* to answer the clearly established inquiry. Precedent demands instead that we go down the stairs of abstraction to a concrete, particularized description of the right. Though not too far down: just as a court can generalize too much, it can generalize too little. If it defeats the qualified-immunity *509 analysis to define the right too broadly (as the right to be free of excessive force), it defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas).

Examples abound of an appropriate middle ground. In an excessive-force case, that might mean asking whether "a disturbed felon, set on avoiding capture through vehicular flight [that placed] persons in the immediate area ... at risk" had a clearly established right not to be shot. *Brosseau v. Haugen,* 543 U.S. 194, 200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam). Or, closer to today's case, it might mean asking "whether a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command, had a clearly established right not to be tased." *Cockrell v. City of Cincinnati,* 468 Fed.Appx. 491, 495 (6th Cir.2012).



[3] Defined at the appropriate level of generality—a reasonably particularized one—the question at hand is whether it was clearly established in May 2007 that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force. The answer is no. Cases from this circuit and others, before and after May 2007, adhere to this line: If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him. Consider cases from this circuit first. In *Williams v. Sandel,* 433 Fed.Appx. 353 (6th Cir.2011), officers confronted a suspect who was high on ecstasy, nude and jogging along the interstate at midnight. *Id.* at 354. The suspect refused to be handcuffed, prompting officers to tase him *thirty-seven* times (and to use batons and pepper spray as well) until he stopped resisting. *Id.* at 362. We held the officers' use of force was reasonable. *Id.* at 363. Or consider *Caie v. W. Bloomfield Twp.,* 485 Fed.Appx. 92, No. 11–1378, 2012 WL 2301648 (6th Cir. June 18, 2012). After two officers wrestled the suspect to the ground, he refused to move his arms from under his body, prompting a third officer to tase him. *Id.* at 94, 2012 WL 2301648 at *2. The tasing was reasonable given the suspect's "active [ ] resist [ance] [to] the officers' attempts to secure his arms behind his back." *Id.* at 97, 2012 WL 2301648 at *4; *see also Williams v. Ingham,* 373 Fed.Appx. 542, 548 (6th Cir.2010) (officers acted reasonably by tasing suspect who would not move his hands from under his body).

By contrast, when we have found excessive force, the suspects were compliant or had stopped resisting. In *Kijowski v. City of Niles,* 372 Fed.Appx. 595 (6th Cir.2010), officers used excessive force by tasing a wedding guest who was sitting in his truck, not disobeying police commands. *Id.* at 600–01. And in *Landis v. Baker,* 297 Fed.Appx. 453 (6th Cir.2008), officers used excessive force by repeatedly tasing a suspect who was pinned on the ground with his face submerged in muddy water. *Id.* at 464; *see also Roberts v. Manigold,* 240 Fed.Appx. 675, 676 (6th Cir.2007) (officers used excessive force by repeatedly tasing suspect even though he was "completely pinned"); *cf. Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 901 (6th Cir.2004) (officers used excessive force by dousing suspect with pepper spray after he was immobilized with handcuffs and leg shackles and stopped resisting).

A suspect's active resistance also marks the line between reasonable and unreasonable tasing in other circuits. *Compare McKenney v. Harrison,* 635 F.3d 354, 360 (8th Cir.2011) (tasing suspect who bolted toward second-story window in an attempt *510 to escape was not excessive force); *Draper v. Reynolds,* 369 F.3d 1270, 1277–78 (11th Cir.2004) (tasing suspect who acted belligerently and refused to provide his license and registration after a traffic stop was not excessive force); *and Hinton v. City of Elwood,* 997 F.2d 774, 781 (10th Cir.1993) (tasing suspect three times who actively resisted officers' attempts to handcuff him was not excessive force); *with Cavanaugh v. Woods Cross City,* 625 F.3d 661, 665 (10th Cir.2010) (tasing non-resistant suspect was excessive force); *Oliver v. Fiorino,* 586 F.3d 898, 906–07 (11th Cir.2009) (tasing suspect ten times was excessive force

because he stopped resisting after the first shock); *Brown v. City of Golden Valley,* 574 F.3d 491, 498–99 (8th Cir.2009) (tasing car passenger who was not attempting to flee or resist arrest was excessive force); *and Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282 (10th Cir.2007) (tasing a non-violent misdemeanant who was not offering any resistance was excessive force).

One decision bucks this trend—kind of. In two consolidated cases, the en banc Ninth Circuit held that officers used excessive force by tasing suspects who offered minimal resistance. *Mattos v. Agarano,* 661 F.3d 433 (9th Cir.2011) (en banc). In the first case, a pregnant woman whom officers pulled over for speeding refused to sign a citation and refused to get out of her car, leading the officers to tase her three times and to handcuff her. *Id.* at 436–38. In the second case, an officer trying to arrest a domestic-abuse suspect tased the suspect's wife when she failed to move out of the way. *Id.* at 438–39. Whatever glimmer of hope the Ninth Circuit's holdings on the constitutional issue offer Hagans is closed by the reality that the court held the officers were entitled to qualified immunity because the right was not clearly established at the time of the encounters. *Id.* at 448, 452. If it did not violate clearly established law to tase a pregnant mother who refused to sign a traffic citation in November 2004, how could it violate clearly established law to tase an out-of-control, shirtless man strung-out on drugs who was thrashing about with two officers on the ground in May 2007? Hagans has not shown any changes in the law over that period or for that matter any law specific to the Sixth Circuit that would clearly establish the illegality of this far more reasonable use of a taser.

This line between suspects who actively resist arrest and those who comply with officers' commands may or may not hold as to the ultimate constitutional question. The taser remains a relatively new technology, and courts and law enforcement agencies still grapple with the risks and benefits of the device. Even as of a year ago, however, it could be said that tasers carry "a significantly lower risk of injury than physical force" and that the vast majority of individuals subjected to a taser—99.7%—suffer no injury or only a mild injury. John H. Laub, Director, Nat'l Inst. of Justice, *Study of Deaths Following Electro Muscular Disruption* 31 (2011); *see also Mattos,* 661 F.3d at 454 (Kozinski, J., concurring in part and dissenting in part).

Acknowledging that he was actively resisting arrest, Hagans points out that *some* factors relevant to the inquiry cut against Officer Ratcliff's decision to employ the taser. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As to whether Hagans posed "an immediate threat to the safety of the officers or others," *id.* at 396, 109 S.Ct. 1865, Ratcliff testified that he did not see Hagans land any kicks or punches on the other officers, the other officers did not appear to be injured or bleeding, and he did not hear Hagans make any threats. **511** As to whether Hagans was "attempting to evade arrest by flight," *id.,* Ratcliff testified that Hagans, who was on the ground and surrounded by officers, did not pose a risk of getting away. And as to "the severity of the crime at issue," *id.,* Ratcliff knew only that someone had reported a disturbance and had no idea what, if any, crime Hagans had committed.

Yet these factors must be assessed together with, not apart from, the reality that Hagans was out of control and continued forcefully to resist arrest. As the district court recognized, the combination of factors presented Officer Ratcliff with a "close call," R. 63 at 14, as some factors cut in favor of using the taser while other factors cut against it. The essence of qualified immunity, however, is to give government officials cover when they resolve close calls in reasonable (even if ultimately incorrect) ways. *See al-Kidd,* 131 S.Ct. at 2085. The fact remains that, prior to May 2007 (and for several years after), no case in any circuit held that officers used excessive force by tasing suspects who were actively resisting arrest, even though many of them, like Hagans, were suspected of innocuous crimes, posed little risk of escape and had not yet physically harmed anybody.

[4] That the taser shocks might have contributed to Hagans' death does not change things. Although the autopsy report concluded that Hagans died from cocaine intoxication, Hagans' expert opined that the taser shocks were "a substantial factor in causing his death." R. 52–5 at 3. Even if we credit Hagans' causation evidence, as we must on summary judgment, that does not override his standard-of-care problem. "In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cnty.,* 606 F.3d 240, 252 (6th Cir.2010) (citation and internal quotation marks omitted). For the reasons just given, Officer Ratcliff did not violate clearly established law when he tried—unsuccessfully, it turns out—to subdue Hagans with the taser. Tragic though Hagans' death assuredly is, that regrettable fact cannot transform the state of the law in May 2007, and it

cannot alter our duty to grant qualified immunity when an officer has not violated clearly established law.

[5] [6] [7] That leaves two other matters. Because Ratcliff did not violate a clearly established right, it follows that his employer, the Franklin County Sheriff's Office, is also entitled to summary judgment. To hold the Sheriff's Office liable, Hagans must show that its "failure to train" officers on the proper use of tasers "amounts to deliberate indifference." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). But "a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 393 (8th Cir.2007) (en banc). The same is true with respect to Hagans' state-law claim for assault and battery. Officer Ratcliff did not violate a clearly established right, and nothing else shows he otherwise acted "with malicious purpose, in bad faith, or in a wanton or reckless character." Ohio Rev.Code § 2744.03(A)(6)(b). Ohio's statutory immunity applies.

### III.

For these reasons, we reverse and remand for further proceedings.

Footnotes

\* The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.